UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA CONE, individually and as
assignee of the rights of CHRISTOPHER
SAELENS,

      Plaintiff,

v.

NORTHFIELD INSURANCE COMPANY,

      Defendant.

Case No. 13-cv-15096
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [27]**

---

This insurance coverage dispute arose when Plaintiff Joshua Cone visited his friend
Christopher Saelens at a construction site where Saelens had contracted to paint a warehouse
owned by The Water Lady, Inc. After Cone arrived, he decided to help out. Unfortunately,
several of Cone's fingers were severed as he attempted to steady himself on a moving platform.
Cone filed suit against Saelens and The Water Lady in Michigan state court. Saelens sought
coverage for the suit from Defendant Northfield Insurance Company pursuant to a general
commercial liability policy he had purchased. Northfield denied coverage. Cone and Saelens
settled the lawsuit for a $1.5 million consent judgment and assignment to Cone of Saelens' rights
under the Northfield insurance policy.

Cone then filed this suit, asserting that he is entitled to the $1.5 million from Northfield
as part of its alleged duties to defend and indemnify Saelens in the underlying suit. Northfield
filed counterclaims seeking a declaratory judgment that the Policy affords no such coverage and
that the settlement was not a product of good faith negotiation. Now before the Court is

Northfield's Motion for Summary Judgment on Cone's claim and its own counterclaims. The Court finds that the Policy affords no coverage for Cone's underlying complaint. Accordingly, Northfield's Motion for Summary Judgment will be GRANTED.

## I.  FACTUAL BACKGROUND

Northfield insured non-party Christopher Saelens d/b/a Chris' Custom Cuts (described as a "lawn care/snow removal/tree service") under a general liability Commercial Insurance Policy ("Policy"). (Dkt. 27-3, Policy, at PageID 204.) The cover page of the Policy advises that "[t]he schedule of coverage declarations, forms and endorsements shown on the S1D-ILS make up your policy as of the effective date shown above." (*Id.*) The Policy provides for the following coverage for "Bodily Injury and Property Damage Liability":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(*Id.* at PageID 218.) The Policy defines an "Insured" as follows: "If you are designated in the Declarations as . . . . [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." (*Id.* at PageID 212, 225.) Saelens is designated in the Declarations as an individual. (*Id.* at PageID 216.)

The Policy includes a "Laborer Exclusion," attached to the Policy as an Endorsement and listed in the S1D-ILS. (*Id.* at PageID 237.) A notation at the top of the page says that "This endorsement modifies insurance coverage under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART." (*Id.* at PageID 237.) The endorsement itself provides:

> This insurance does not apply to "bodily injury" to:

(1) Any person who is an "employee", "leased worker", "temporary worker", "volunteer worker" of you or any insured arising out of and in the course of:
    (a) Employment by you or any insured; or
    (b) Performing duties related to the conduct of your or any insured's business;
(2) Any person who contracted with you or with any insured for services arising out of and in the course of performing duties related to the conduct of your or any insured's business; For the purposes of this exclusion, contracted with includes contracting with an oral or written contract.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the injury.

(Policy at PageID 237.) The Policy defines "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." (*Id.* at PageID 232.)

Cone sustained his injuries on November 17, 2012. On that day, he went to visit Saelens at a warehouse owned by non-party The Water Lady, Inc. ("The Water Lady"). Saelens testified that he entered the contract with The Water Lady and was paid by The Water Lady for his painting services, but that his father had built the warehouse structure. (Saelens Dep. at 130–131.) As will be explained below, the relevant material facts regarding Cone's injury are those that Cone alleged in his state court complaint against Saelens and The Water Lady. In that complaint, filed on February 18, 2013, Cone alleged:

That some time prior to November 17, 2012 the defendant, SALENS [*sic*] and defendant, THE WATER LADY. INC., entered into a contract whereby defendant, SALENS [*sic*], agreed to paint defendant, THE WATER LADY, INC.'s warehouse located at 2205 St. Clair Highway, East China Township, Michigan. . . .

3

> That defendant, SALENS [*sic*], utilized the services of plaintiff, JOSHUA CONE, to assist in painting the warehouse. Plaintiff, CONE, was not an employee of defendant, SALENS [*sic*], or of the defendant, THE WATER LADY, INC., and plaintiff, CONE, was not paid any compensation by defendant, SALENS [*sic*], or defendant, THE WATER LADY, INC., for his help and assistance in painting the warehouse.

> That defendant, SALENS [*sic*], while the forks of the forklift were raised with your plaintiff [CONE] on the forks began to move the forklift, causing your plaintiff [CONE] to lose balance, catching [CONE'S] hand in the chain utilized to raise and lower the forks, severing parts of three fingers on [CONE'S] left hand.

(Dkt. 27-4, Underlying Compl. at ¶¶ 7, 9, 13.) Cone asserted claims of Negligence and "Ownership Liability." (*See id.*)

Saelens notified Northfield of the lawsuit via e-mail on March 27, 2013. (Dkt. 27-2, Andrew Moeller Aff., at ¶ 3.) Attached to Cone's response brief is Northfield's claim file, which contains the information Saelens provided to Northfield pre-suit and notes on the underlying complaint. (Resp. Br. at Ex. E.) Northfield denied coverage for the lawsuit via letter on April 2, 2013. (Dkt. 27-5, Letter of April 2, 2013.) Northfield concluded that

> Because Joshua Cone was either an 'employee' of yours or a 'volunteer worker' who was performing duties related to the conduct of your business and the work was being performed for The Water Lady, Exclusion S94-CG [The Laborer Exclusion] operates to preclude coverage for Christopher Saelen [*sic*] dba Chris' Custom Cut or any other entity.

(*Id.* at PageID 279.) Accordingly, Northfield advised Saelens that it would be "unable to handle this matter on your behalf, defendants, pay any sums you may be legally obligated to pay as damages, or defend them against this action." (*Id.*)

4

The state court proceedings continued until at least November 2013,[1] when Cone and Saelens executed a settlement agreement. (Dkt. 27-13, Settlement Agreement.) The Settlement Agreement provides that Cone and Saelens

> agreed to settle [the] lawsuit against CHRISTOPHER SALENS, [*sic*] individually and d/b/a CHRIS' CUSTOM CUTS by entry of a Consent Judgment in the amount of One Million Five Hundred Thousand ($1,500,000.00) Dollars and assignment of his rights under the insurance policy and all claims he has against Northfield Insurance company, in exchange for JOSHUA CONE's agreement to pursue only the policy of insurance identified above and any other policy of insurance issued to Christopher Sales [*sic*] individually and d/b/a CHRIS' CUSTOM CUTS that may have been in effect at the time of injury . . . .

(*Id.*)

Shortly after executing the Settlement Agreement, Cone filed a suit for "Declaratory Judgment" in Wayne County Circuit Court, alleging that Northfield erroneously denied coverage for his injuries under the Policy and that therefore Cone was entitled to a $1.5 million payment from Northfield. (Dkt. 1-2, State Ct. Compl.) Northfield removed the Complaint to this Court on December 16, 2013. (Dkt. 1.) In its Answer, filed January 22, 2014, Northfield asserted three counterclaims seeking a declaratory judgment that the "underlying complaint did not trigger coverage under the policy" (Count I), "Northfield is not obligated to pay [the] underlying settlement" (Count II), and in the alternative, that "Northfield is not obligated to pay the settlement because it is unreasonable or not the product of good-faith negotiation" (Count III).

Now before the Court is Northfield's Motion for Summary Judgment on both Cone's claims and its own counterclaims, filed on October 31, 2014. (Dkt. 28.) The Court heard oral argument on the motion on February 10, 2015.

---

[1] Though not material to this dispute, the status of Cone's claims against The Water Lady is unclear from the record.

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

As to Cone's claims, because Northfield does not bear the burden of persuasion at trial, it may discharge its initial summary-judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If Northfield does so, Cone "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of Plaintiff's claims to a jury, or whether the evidence is so one-sided that Defendant must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

As to Northfield's counterclaims, for which it has the burden of persuasion, Northfield's showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [Northfield]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Cockrel v. Shelby Cnty. Sch. Dist.*, 270

F.3d 1036, 1056 (6th Cir. 2001) ("[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" (quoting 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56–138 (3d ed. 2000))).

## III.ANALYSIS

The dispositive issue for both Cone's claims and Northfield's counterclaims is whether Cone's injuries are covered by the Policy. The Court finds that because Cone's activities at the construction site fall within the Policy's Laborer Exclusion, the Policy does not cover them and Northfield did not have a duty to defend or indemnify Cone's claims against Saelens. Accordingly, Northfield has met its burden on summary judgment and the case will be dismissed.

### A. Jurisdiction

There is no dispute that the parties are diverse and the jurisdictional minimum is met pursuant to 28 U.S.C. § 1332, and that the Court may exercise supplemental jurisdiction over Northfield's counterclaims pursuant to 28 U.S.C. § 1367.

But simply because this Court has authority to adjudicate this lawsuit, does not necessarily mean it should. In light of the recent case *Western World Insurance Co. v. Hoey*, 773 F.3d 755 (6th Cir. 2014), and the fact that Cone's Complaint is styled as a declaratory judgment action, the Court asked the parties to submit supplemental briefing on whether the Court should exercise discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, to hear this dispute. (Dkt. 34.) The Court has reviewed the supplemental briefs (Dkts. 36, 37) and finds that exercise of jurisdiction over the dispute is appropriate.

7

As Northfield points out, Cone's underlying complaint has already been resolved through his settlement with Saelens, and he now seeks to enforce the settlement against Northfield. Accordingly, what Cone is really seeking is an immediate remedy in the form of money damages rather than a declaratory judgment. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) ("Prior to [the Declaratory Judgment Act,] a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked.").

Moreover, if the Court were to consider this case to be solely a declaratory judgment action, the five factors set forth in *Hoey*, 773 F.3d at 759, are all met. There is no longer a pending state court action. Accordingly, a declaration from this court would settle the controversy and clarify the parties' legal relations. There is no concern about procedural fencing because the state court case has already concluded. There is plenty of Michigan insurance law to provide guidance to the Court. And it appears that the only alternative resolution of this case would be a remand to state court, which would not be effective with a dispositive motion already filed in this court.

### B.  Applicable Law

The Court agrees with the parties that this dispute is governed by Michigan law. (*See* Def.'s Br. at 9 n.4; Pl.'s Resp. Br. at 10–11 (citing Michigan insurance law).) A federal court sitting in diversity will "apply the law, including the choice of law rules, of the forum state." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008) (quoting *Himmel v. Ford Motor Co.*,

342 F.3d 593, 598 (6th Cir. 2003)). Michigan courts have adopted the Restatement (Second) of Conflict of Laws approach for contract disputes. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 702 (1995). Therefore,

> In the absence of an effective choice of law by the parties . . . , the contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Uhl*, 512 F.3d at 302 (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971)). Here, the Policy does not contain a choice of law provision. It is clear, however, that the dispute involves an insurance policy issued to a Michigan resident (Saelens) for activities conducted in Michigan. Accordingly, the Court will apply Michigan law.

This case hinges on Northfield's duties, if any, to defend and indemnify Saelens for Cone's underlying complaint and related settlement agreement. "The duty to indemnify arises only with respect to insurance afforded by the policy, whereas the duty to defend arises if a third party's allegations against the insured arguably come within policy coverage." *City of Warren v. Int'l Ins. Co. of Hannover*, 524 F. App'x 254, 258 (6th Cir. 2013) (citing *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 552 N.W.2d 475, 481 (Mich. 1996)). Accordingly, courts applying Michigan law have found that if a duty to defend does not exist, a duty to indemnify will not arise either. *E.g. Liberty Ins. Corp. v. Bowles*, No. 13-13784, 2014 U.S. Dist. LEXIS 103711, at *9–11 (E.D. Mich. July 30, 2014) ("[B]ecause the duty to defend is broader than the duty to indemnify, Plaintiff shall not be responsible for indemnifying Defendant Bowles in the unlikely event that Defendant Valentine prevails against him on her negligence theory." (citation and internal quotation marks omitted)).

9

In Michigan, "[t]he duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured." *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981). "[I]f the allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." *Royce v. Citizens Ins. Co.*, 557 N.W.2d 144, 147 (Mich. Ct. App. 1996) (citation omitted). Further, "[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich.*, 610 N.W.2d 272, 275 (Mich. Ct. App. 2000). If, based on the underlying complaint, "the policy does not apply, there is no duty to defend." *Am. Bumper*, 552 N.W.2d at 481.

"In order to determine whether an insurer has a duty to defend its insured, this Court must look to the language of the insurance policy and construe its terms to find the scope of the coverage of the policy." *Royce v. Citizens Ins. Co.*, 557 N.W.2d 144, 146 (Mich. Ct. App. 1996). Because "[a]n insurance policy is much the same as any other contract," the Court must "look at the contract as a whole and give meaning to all terms." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 434 (Mich. 1992). In addition, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Id* (citing *Shelby Mut. Ins. Co. v. United States Fire Ins. Co.*, 162 N.W.2d 676, 678 (Mich. Ct. App. 1968) ("If the question is whether the exclusionary provisions of a policy avoid the asserted liability, the exclusionary language is strictly construed, again to favor insurance.")). But "[c]lear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume." *Id.* (citing *Kaczmarck v. La Perriere*, 60 N.W.2d 327, 330 (Mich. 1953)).

### C. Analysis

With the above principles in mind, the Court turns to the parties' dispute. Northfield asserts that based on the Laborer Exclusion, "[t]he Policy excludes coverage for Cone's claims because the underlying complaint alleged facts establishing that Cone was either an 'employee' or a 'volunteer worker,' and that his injuries occurred while performing duties related to the conduct of Saelen[s'] business." (Def.'s Br. at 2.) Cone responds that the Laborer Exclusion does not apply to him because the insurance policy was issued for Saelens' lawn care and snow removal business rather than construction work. (Pl.'s Resp. Br. at 15.) He further alleges that Saelens was performing the construction work for the benefit of his father. (*Id*.) Thus, argues Cone, "the exclusion does not apply to the situation were [*sic*] Saelens was engaged in activities outside of his business and in furtherance of his father's business as a licensed contractor." (*Id.*)

Thus, there are two essential questions before the Court. First, is the application of the Laborer Exclusion limited only to those business activities engaged in by Saelens and listed in the "Business Description" in the Policy Declaration? Second, does the underlying complaint establish that Cone was acting as an "Employee" or "Volunteer Worker" when he helped Saelens? The Court answers "no" to the first question, and "yes" to the second. Accordingly, the Court finds that Northfield is entitled to summary judgment.

### 1. Business Description

Cone first seeks to avoid summary judgment on the basis that the Laborer Exclusion does not apply to him. His argument proceeds as follows. He contends that Saelens, rather than engaging in a business of his own, was merely helping his father – the person who actually had "business" with The Water Lady. But this is belied by the underlying complaint in which Cone alleges that Saelens was the person who contracted with The Water Lady. At the hearing,

however, Cone's counsel argued that Northfield admitted that the Policy was applicable even if the work Cone was doing when he was injured was for Saelens' father and not for Saelens. Thus, says Cone, the only issue before the Court is whether the Laborer Exclusion, viewed in isolation, applies to the day's events. And Cone says that the "insured's business," as the term is used in the Laborer Exclusion, must mean the "Business Description" listed in the Policy—here, lawn care, snow removal, and tree service. In other words, Cone argues the Exclusion cannot bar recovery for his injuries because they were sustained in the course of the "insured's father's business" and not in the course of the "insured's business," but that the Policy still applies because Northfield admitted that it did in the claim file notes. There are several problems with this argument.

First, because the issue is whether Northfield had a duty to defend, the Court can only consider the allegations of the underlying complaint. It is true that the insurer's "duty to defend cannot be limited by the precise language of the pleadings." *Detroit Edison*, 301 N.W.2d at 835. However, "[t]he duty to defend 'is predicated not on facts disclosed by an insurer's independent investigation which indicates or even proves noncoverage, but only upon allegations in the complaint against the insured.'" *Certified Restoration Drycleaning Network, LLC v. Fed. Ins. Co.*, No. 12-10531, 2013 U.S. Dist. LEXIS 54457, at *15 (E.D. Mich. Apr. 16, 2013) (quoting *Dochod v. Cent. Mut. Ins. Co.*, N.W.2d 122, 124 (Mich. Ct. App. 1978)). Accordingly, Michigan courts and federal courts applying Michigan law look solely to the underlying complaint to evaluate whether there was a duty to defend. *E.g. Keely v. Fire Ins. Exch.*, 833 F.Supp.2d 722, 728 (E.D. Mich. 2011); *Radenbaugh*, 610 N.W.2d at 275; *Detroit Edison*, 301 N.W.2d at 835. Thus, the Court can only consider Cone's underlying complaint in evaluating Northfield's duty to defend. And here, the underlying complaint expressly says that "SALENS [*sic*] and defendant,

THE WATER LADY. INC., entered into a contract whereby defendant, SALENS [*sic*], agreed to paint defendant, THE WATER LADY, INC.'s warehouse . . . ." (Underlying Compl. ¶ 7.) There is no mention of Saelens' father at all, let alone that the work was being done for him. For this reason, the first premise of Cone's argument (that the Court must accept that Saelens was only working for his father) fails.

Second, even if the Court were to consider the claim file, it is consistent with the allegations of the underlying complaint and does not support Cone's assertion that Northfield admitted coverage. The relevant entries from the claim file are as follows:

1/9/2013: Exchanged voice mails with the insured. Spoke with the adjustor from Hastings, who insures The Water Lady. *There is a written document between The Water Lady and the insured*. . . . Apparently, they take the position that Cone was not an employee but rather was just helping out.

1/9/2013: The policy has an exclusion for "Injury to employees, workers or contracted persons of insured ..." which appears to apply,

. . .

1/9/2013: Discussed with Steve. *His dad had contracted to put on an addition. He was helping him out.* 14 ft. walls were impossible to work on so he got permission from the customer to use their fork lift. He placed a pallet and plywood on the forks and had lifted Joshua Cone up. He says Cone not an employee. Not on the payroll. Was collecting unemployment. He was going to pay him cash at the end of the deal. . . . Cone appears to fall within the definitions outline[d] in the Endorsement S94-CG and the claim would not be covered under the terms of the policy.

. . .

3/28/2013: Received via e-mail yesterday suit papers . . . *Saelens had a contract with The Water Lady to paint*. Saelens "utilized the services of plaintiff, Joshua Cone, to assist in painting the warehouse." While Saelens was operating the lift provided by The Water Lady, plaintiff lost his balance and his fingers got in the chain, amputating the fingers. Cone says he was not an employee and was not paid by either Saelens or The Water Lady. I sent a disclaimer letter to the insured February 14. Our position on the suit papers should be the same.

. . .

13

> 3/29/2013: Discussed with Lee - policy is for insd as a lawn care / snow removal contractor. There is no classification limitation on the policy, so no coverage issue there, but going to have Lee pull the app to see whether or not there is any indication of misrepresentation. *The insured was hired to construct a building in this case.*
>
> . . .
>
> 4/02/2013: "Reviewed app with Lee – there is nothing in app that would point to misrep by the insured. There is not a question specific enough about doing other types of work such as constructing a building, we will move on and disclaim based on the s94 exclusion."

(Pl.'s Ex. E, Claim File, at 1–2 (emphases added).) The claim file reflects Northfield's understanding, both before and after the suit was filed, that Saelens had a contract to paint The Water Lady's warehouse. And it reflects that Northfield was inclined to deny coverage from the beginning. An isolated hearsay statement in a claim file note that a person named Steve said that Saelens was working for Saelens' father is not an admission by Northfield that, in the absence of an applicable exclusion, Saelens' Policy would provide coverage if the work was being done for his father's business. Furthermore, the statement that there was no "classification issue" mitigates against Cone's restrictive reading of the exclusion. Thus, the second premise of Cone's argument – that Northfield admitted that coverage existed in the absence of an applicable exclusion – is simply not supported by the summary judgment record (to the extent that the Court could even consider it in analyzing the duty to defend, as noted above.) Again, Cone himself filed the underlying complaint, and it contains no indication whatsoever that the contract was between anyone other than Saelens and The Water Lady.

Third, Cone's argument runs contrary to basic contract interpretation principles. The Commercial Insurance Policy and the Laborer Exclusion are part of the same contract and so they should be interpreted together. *See Farm Bureau Mut. Ins. Co. v. Buckallew*, 633 N.W.2d 473, 476 (Mich. Ct. App. 2001) ("This Court interprets an insurance contract by reading it as a

14

whole and by according its terms their plain and ordinary meaning."). The Policy language makes clear that Saelens' Policy consists of both "Common Policy Declarations," including the Commercial Insurance Policy, and of "Commercial General Liability Coverage Part Declarations," including the Laborer Exclusion. (Policy at PageID 211 (listing the aforementioned documents and noting that "[t]he following schedule of coverage declarations, forms and endorsements make up your policy as of the effective date shown above").) Indeed, the Laborer Exclusion endorsement expressly provides that "[t]his endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART." (Policy at PageID 237.) Because the term "business" is used in both the Policy's definition of "Who is an Insured" and the Laborer Exclusion, Cone is asking the Court to apply a different meaning of "business" in different parts of the insurance contract. This argument is not supported by the principles of contract law. *See DRG, Inc. v. Talent Tree, Inc.*, No. 1:02-cv-401, 2002 U.S. Dist. LEXIS 26341, at *13 (W.D. Mich. Aug. 13, 2002) ("The same word usually has the same meaning in a contract."); *see also Bartley v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 824 F. Supp. 624, 632 (N.D. Tex. 1992) (noting that it is a "cardinal rule that terms in a contract be given the same meaning throughout the instrument."). Thus, if Cone were correct that "business" as used in the exclusion does not include Saelens' father's business, or a business that is not lawn care/snow removal/tree service, the same would be true for the definition of "Insured" – and the Policy would not provide coverage at all.

Fourth and finally, Cone's restrictive interpretation of the term "business" as used in the Laborer Exclusion is incorrect. It is undisputed that the Policy does not define "business" as the word is used in the Laborer Exclusion. But that does not mean that "business" is limited to the "Business Description" in the Policy Declarations. The Policy itself contains no language

15

limiting coverage solely to the business activities listed in the Business Description. Rather, it provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Policy at PageID 218.) Saelens is designated as an "Individual" in the Declarations. (Policy at PageID 216.) Under the Policy, this means that "[Saelens] and [his] spouse are insureds, but only with respect to the conduct of a business of which [Saelens and/or his spouse were] the sole owner[s]." (Policy at PageID 225.) Again, nothing in this language appears to limit "business" to those business activities listed in the Business Description.

Whether a Business Description standing alone can limit the coverage available to an insured (or the applicability of an exclusion) appears to be an issue of first impression in Michigan, as neither the parties nor the Court have found a Michigan case that is directly on point. When faced with the same question and a similar lack of state law precedent, the Northern District of Illinois held that "the specified business description . . . [did] not on its own limit the coverage available under the Policies." *Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC*, No. 11 C 1710, 2012 WL 3482260, at *3 (N.D. Ill. Aug. 13, 2012).

*Irving Park* was a declaratory judgment action where an insurer sought a declaration that it was not obligated to defend or indemnify its insured, a condominium association, in a lawsuit relating to the association's management of the property. The policy in that case was a general commercial liability policy with a notation reading "Business Description: Condominium Association." *Id.* at *1. Based solely on the Business Description, the insurer argued that coverage, if any, would only apply to "those activities of [the association] that relate to its status as manager and/or member of a condo association." *Id.* at *3. The court disagreed: "If PIIC intended to limit its coverage to only those actions taken by 1801 in its capacity as a

16

'Condominium Association,' it should have specifically said so." *Id.* (citing cases in which the insurer used specific language to indicate that coverage would be limited by the business description). Similarly, in *Comm. Union Ins. Co. v. Cannelton Indus.*, No. 2:92-cv-111, 1996 U.S. Dist. LEXIS 15646, at *16–17 (W.D. Mich. Sept 27, 1996), the district court held that a Commercial General Liability insurance policy would not cover "only liabilities that occur at a specific site listed in the insurance declarations or endorsements" because "[t]hese declarations and endorsements are merely descriptive of the insured entity."

Here, of course, it is Cone seeking to limit the scope of the coverage exclusion, and not Northfield seeking to limit the applicability of coverage in general. But the same logic applies: if the parties intended to limit the term "business" solely to those business activities listed in the Business Description, they could have done so explicitly in the Policy or the Laborer Exclusion. Such intent is "nowhere apparent in the plain meaning of the words chosen by the parties." *Mt. Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 237 (2d Cir. 2002) (applying New York law and holding that a business description of "Carpentry" did not preclude coverage for a worker's death where the worker was not engaged in carpentry at the time of the accident).

Indeed, as Northfield points out, the Exclusion extends to "conduct of your or *any insured's business*." (Def.'s Reply Br. at 3 n.2; Policy at PageID 237 (emphasis added).) Thus, if Saelens' spouse had a business, it might be something entirely different than the business of Chris' Custom Cuts, but it would still be covered under the plain language of the contract. So if the Court were to limit the Exclusion solely to those activities listed in the Business Description, the words "any insured's business" would become surplusage—at least in that context. Such an interpretation is rarely correct. *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003) ("Just as '[c]ourts must give effect to every word, phrase, and clause in a statute

and avoid an interpretation that would render any part of the statute surplusage or nugatory,' courts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." (quoting *State Farm Fire & Cas. Co. v. Old Republic Ins. Co.*, 644 N.W.2d 715, 716 (Mich. 2002)).

Accordingly, the Court finds that the Laborer Exclusion is not limited to those business pursuits specified in the Business Description part of the Policy. Rather, the Exclusion (and the Policy as a whole) covers the conduct of business of the insured (Saelens), which is not limited by the Business Description. Because the Policy does not define it, the Court reads the term "business" according to its ordinary and plain meaning. *See Bianchi v. Auto. Club of Michigan*, 467 N.W.2d 17, 20 n.2 (Mich. 1991) ("The terms of an insurance policy should be construed in the plain, ordinary and popular sense of the language used, as understood by the ordinary person . . . ." (quoting 14 Callaghan, Michigan Civil Jurisprudence, Insurance, § 149, p. 134)). Black's Law Dictionary (9th Edition) defines business as "[a] commercial enterprise carried on for profit . . . ." *See also* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/business (last visited Jan. 28, 2014) (defining "business" as "the activity of making, buying, or selling goods or providing services in exchange for money; work that is part of a job; the amount of activity that is done by a store, company, factory, etc.").

Based on the underlying complaint, Saelens was engaged in the conduct of a business. The underlying complaint states that "SALENS [*sic*] and defendant, THE WATER LADY, INC., entered into a contract whereby defendant, SALENS, agreed to paint defendant, THE WATER LADY, INC.'s warehouse . . . ." (Underlying Compl. at ¶ 7.) The Water Lady hired Saelens to paint the warehouse—this was clearly a commercial transaction. Moreover, the underlying complaint refers to defendant as "SALENS [*sic*] individually and d/b/a CHRIS' CUSTOM

18

CUTS," implying that Cone sued Saelens in his capacity as a business owner; in fact, the very business referenced in the Policy. Thus, the Laborer Exclusion applies and the question becomes whether Cone fell within its scope.

### 2. Laborer Exclusion

For the Laborer Exclusion to apply to Cone and therefore bar coverage for his injuries, Northfield must demonstrate that Cone was "an 'employee', 'leased worker', 'temporary worker', 'volunteer worker' of [Saelens] arising out of and in the course of" either (1) "Employment" by Saelens or (2) "Performing duties related to the conduct of [Saelens'] business." (Policy at PageID 237.)

Northfield argues that Cone was either an employee or a volunteer worker of Saelens. Based on the allegations of the underlying complaint, the Court agrees that Cone was a volunteer worker for Saelens. The underlying complaint asserts, in relevant part:

> [D]efendant, SALENS [*sic*], utilized the services of plaintiff, JOSHUA CONE, to assist in painting the warehouse. Plaintiff, CONE, was not an employee of defendant, SALENS [*sic*], or of the defendant, THE WATER LADY, INC., and plaintiff, CONE, was not paid any compensation by defendant, SALENS [*sic*], or defendant, THE WATER LADY, INC., for his help and assistance in painting the warehouse. . . . defendant, SALENS [*sic*], instructed your plaintiff, JOSHUA CONE, to position himself on the forks of the forklift for the purpose of painting some portion of the warehouse.

(Underlying Compl. at ¶¶ 9, 12.) These allegations show that Cone donated his time to helping Saelens paint the warehouse pursuant to Saelens' contract with The Water Lady, and that Cone's duties at the job site were determined by Saelens. Cone performed duties toward the accomplishment of a common goal with and at the direction of Saelens (painting the warehouse) and was not paid for his efforts (regardless of whether Saelens and Cone intended that Cone be paid). And the Policy defines "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties

determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." (Policy at PageID 232.) Accordingly, Cone falls within the Policy's definition of "volunteer worker."

The Court also finds it undisputed that Cone was performing duties related to the conduct of Saelens' business. As discussed above, Saelens' contract with The Water Lady to paint the warehouse constituted a "business" within the plain and ordinary meaning of the term. And the allegations of the underlying complaint are that Cone was injured while helping Saelens to fulfill his contractual obligation to paint the warehouse. Therefore, there is no coverage.

Because Cone's injuries did not trigger coverage under the Policy, the Court finds that Northfield had no duty to defend the underlying complaint and therefore has no duty to indemnify Saelens for the $1.5 million settlement agreement.

### D. Northfield's Counterclaims

Northfield also moved for summary judgment on all three of its counterclaims, which seek declarations that Northfield was not obligated under the Policy to defend or indemnify Saelens against the claims asserted in the underlying complaint, that Northfield has no duty under the policy to indemnify the settlement between Saelens and Cone, and, in the alternative, that the settlement was not the product of good faith negotiation.

The Court has already found that the Policy did not provide coverage and there was no duty to defend the underlying complaint or indemnify the settlement agreement. Therefore, it is unnecessary to reach Northfield's alternative counterclaim regarding good faith settlement negotiations. And the Court has already thoroughly addressed the parties' arguments regarding the first two counterclaims in its analysis above, finding Northfield's interpretation of the insurance contract to be the correct one. This obviates the need to address Northfield's

counterclaims separately. *See Erickson v. Brock*, No. 09-cv-02461, 2009 WL 4884424, at *2–4 (W.D. Tenn. 2009) (discussing Sixth Circuit case law on "mirror image" counterclaims).

## IV. CONCLUSION

Cone was a volunteer worker performing duties related to the conduct of Saelens' business. Therefore, Northfield's insurance policy excludes coverage for Cone's underlying complaint and Northfield had no duty to defend and has no duty to indemnify Saelens with respect to the $1.5 million settlement agreement.

Accordingly, the Court GRANTS Northfield's Motion for Summary Judgment.


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  February 17, 2015


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 17, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson